[Civ. No. 25404. First Dist., Div. Two. Aug. 25, 1969.]

DELMAR ROBERT BENNETT, Plaintiff and Appellant, v. INTERNATIONAL SHOE COMPANY, Defendant and Respondent.

Dorsey Redland and John A. McGuinn for Plaintiff and Appellant.

William L. Ferdon, David R. Pigott and Chickering & Gregory for Defendant and Respondent.

AGEE, J.—In this personal injury action brought by a practicing physician against defendant International Shoe

Company, the manufacturer of Florsheim shoes, a pair of which the doctor bought at a retail store and which allegedly had soles so smooth and glossy that he was caused to slip and fall, the trial court granted a nonsuit at the conclusion of plaintiff's case and this appeal followed.

Appellant's cause of action is based upon the strict tort liability of a manufacturer that arises "when an article he places on the market, *knowing that it is to be used without inspection for defects,* proves to have a defect that causes injury to a human being." (*Greenman* v. *Yuba Power Products, Inc.* (1963) 59 Cal.2d 57, 62 [27 Cal.Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049]; italics added.) To establish the manufacturer's liability it is sufficient that plaintiff prove that he was injured while using the article or product "in a way it was intended to be used as a result of a *defect in design* and manufacture *of which plaintiff was not aware*[1] that made the . . . [product] unsafe for its intended use." (*Greenman, supra,* p. 64; italics added.)

Appellant's second amended complaint, upon which he went to trial, alleges in substance: that on June 7, 1963 appellant purchased a pair of Florsheim shoes from a retail store in Daly City; that the shoes were placed on the market by respondent knowing that they would be used without inspection for defects; that appellant did not in fact inspect the shoes for defects; that the shoes were defective in that their soles were so slippery as to make it unsafe for a wearer thereof to walk safely; that by reason thereof appellant was caused to slip and fall and sustain injuries to his person.

The pretrial conference order, under the heading of "Factual and Legal Contentions," repeats the foregoing allegations as being one of the factual contentions of appellant.

Two weeks before June 7 appellant had been in the store looking at shoes. At that time he selected the style and color of the shoes that he wanted from all of those shown to him. However, the store did not have his size in stock and had to order them for him.

Appellant admitted that he inspected the "sample" or "demonstrator" pair of shoes. He gave the following answers to the following questions asked by his attorney: "Q. My question is, Did you inspect these [sample] shoes? 'Yes' or

---

[1]*Appellant testified that he did not know that the soles of the shoes had been waxed,* but he never denied that he knew that the soles were smooth and glossy; he merely denied knowing what material was used to put them in that condition.

'No.' A. Yes. Q. And in what manner did you inspect the shoes? A. I probably held them and looked at the shoes and looked at the style and the leather and the workmanship in the shoe.''

With respect to appellant's inspection of the shoes which he received two weeks later, he gave the following testimony: "Q. Did you inspect the shoes on that occasion? A. Probably, just to see that they were the style that I had ordered.''

The evidence shows that the purchased shoes were identical with the "sample" shoes except as to size and appellant does not contend to the contrary. In other words, appellant put on the purchased pair and wore them out of the store with knowledge that their soles were smooth and glossy. Assuming, arguendo, that the condition of the soles was a defect in the design of the shoes, it was not a hidden or latent defect or one of which appellant was not aware.

Furthermore, the product involved herein is not one that the manufacturer knew or should have known was "to be used without inspection." (*Greenman, supra.*)

*Additional facts.* Appellant testified as follows: that he tried on the shoes at the store and walked around on its carpeted floor a little bit to to see how they felt; that he decided to keep them on; that he walked along the cement sidewalk between the store and his office, a distance of 600 to 800 feet; that he walked up one flight of vinyl-covered stairs to his office; that he saw patients in his office until 6:30 or 7 p.m.; that his office floor is covered by carpeting and vinyl; that he then left the building and went to the lot where his car was parked; that he probably then made some hospital calls and then went some place to eat; that about 9 p.m. he went to the apartment of a friend who was giving a small cocktail party; that her apartment was on the third floor and the two flights of stairs which he climbed were carpeted; that the floor of the apartment was hardwood and was covered in places with throw rugs; that he left the apartment about 10 p.m. and walked down the carpeted hallway to the head of the stairway; that he stepped down the first step with his right foot and as he stepped on the second step his foot slipped and he fell on his left side sustaining a fracture of the left femur; that up to this time he had not slipped or had any difficulty with the shoes; that after the accident "I felt the shoes were unduly slippery, that it caused me to go to the hospital, caused me to be injured. . . .''

Respondent answered certain interrogatories in discovery proceedings, stating that aniline stain is applied to the sole with a sponge, then the sole is sprayed with liquid wax, and then an application of stick wax is applied with a cloth roll; that the purpose of this process is to improve the appearance of the sole.

*Expert testimony.* The court refused to allow a mechanical engineer (Rosenthal), produced by appellant, to testify as to the result of certain tests made by him on the sole of the left shoe and as to his general observations and opinion of the safety of a sole treated in the manner described above.

Although the record is not too clear, we will accept appellant's statement that the expert "would have testified that the bottom finishing process increases the slipperiness of sole leather on all surfaces tested, especially on carpeting, to such extent that an unsafe condition is created until the wax is worn off.''

Appellant further states: "Through common sense and experience, a layman knows that the use of waxed shoe soles on carpeting creates a slippery condition. Mr. Rosenthal's testimony was intended to aid the layman by defining that slipperiness in scientific terms. . . . The results of his tests would have been equally relevant if the accident happened on an oak floor, a sidewalk or on any other surface. In fact, his tests would be relevant even if there were no accident. For in *essence,* he would say that wax on the bottoms of shoes increases slipperiness under any condition." (Italics added.)

The trial court stated that the reasons for its rejection of the offered expert testimony were that there were "too many variables" involved and it had not been shown that Rosenthal was "an expert in some of the particulars that are involved."

We need not discuss the soundness of these reasons or whether the trial court abused its discretion in rejecting the offered expert testimony because we do not believe that the circumstances of this case or appellant's theory of the case call for expert testimony. (See excellent discussion in 19 Cal. Jur.2d, § 289, Evidence.)

As stated in *Davey* v. *Southern Pac. Co.,* 116 Cal. 325, 329 [48 P. 117] : "No rule of decision is better or more firmly established by authority, nor one resting upon a sounder basis of reason and propriety, than that a ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason. If right upon any theory of the law

applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion.''

*Conclusion.* We have concluded that the evidence before us, viewed in the light most favorable to appellant, is insufficient as a matter of law to establish a prima facie cause of action against the respondent manufacturer and that the trial court did not err in granting a nonsuit.

Judgment affirmed.

Shoemaker, P. J., and Taylor, J., concurred.