[S.F. No. 22875. In Bank. Oct. 17, 1972.]

CELESTINO LUQUE, Plaintiff and Appellant, v.
GEORGE McLEAN, as Trustee, etc., et al., Defendants and Respondents.

**COUNSEL**

Cartwright, Saroyan, Martin & Sucherman and Robert E. Cartwright for Plaintiff and Appellant.

Edward I. Pollock, Theodore A. Horn, Marvin E. Lewis, William H. Lally, Joseph W. Cotchett and Leonard Sacks as Amici Curiae on behalf of Plaintiff and Appellant.

Ropers, Majeski, Kohn, Bentley & Wagner and Michael J. Brady for Defendants and Respondents.

**OPINION**

**SULLIVAN, J.**—In this products liability case, as in *Cronin* v. *J.B.E. Olson Corp., ante,* page 121 [104 Cal.Rptr. 433, 501 P.2d 1153], we examine the factual elements which an injured plaintiff has the burden of proving in order to obtain a recovery upon a theory of strict liability in tort. ▮ Here the precise question confronting us is whether the plaintiff must establish, among other facts, not only that the product contained a defect which proximately caused his injuries but also that he was not aware of the defect at the time of the accident. We hold that he need not do so. Accordingly, we conclude that the trial court's instruction which imposed such a burden of proof was prejudicially erroneous. We reverse the judgment.

Plaintiff Celestino Luque lived in Millbrae with his cousins, Harry and Laura Dunn, who purchased from defendant Rhoads Hardware (Rhoads) a rotary power lawn mower manufactured by defendant Air Capital Manufacturing Company (Air Capital). The record discloses that the basic principle of a rotary mower is the rotation at extreme speed of a single blade which cuts the grass like a machete and ejects it through an unguarded hole in the front of the mower. In the machine used by plaintiff, the blade revolved at a speed of 175 miles per hour, passing the unguarded hole 100 times a second. Adjacent to this hole, the word "caution" was printed on the appliance. Although Air Capital, the manufacturer, presented evidence that it customarily included safety instructions with every lawn mower shipped from its factory, Mr. Dunn denied receiving any. According to the manufacturer, the safety leaflet warned against leaving the mower without turning off the motor. There was also evidence that plaintiff had been instructed by Mr. Dunn on the operation of the mower and on the danger of putting a hand in the unguarded hole.

On December 4, 1965, a friend of the Dunns asked plaintiff to cut her lawn. With the help of Mr. Dunn, plaintiff took the Dunns' mower to the friend's residence a few blocks away. Plaintiff testified that as he was cutting the grass, which was wet, he noticed a small carton in the path of the mower. He left the mower in a stationary position with its motor running and walked over to remove the carton. As he did so, he suddenly slipped on the grass and fell backward. His left hand went into the unguarded hole of the mower, was caught in the revolving rotary blade and was severely mangled and lacerated.

Plaintiff brought this action against Air Capital, Rhoads, and the distributor Garehime Corporation on the theories of strict liability, negligence and breach of warranty. At trial, plaintiff's expert witness testified that the lawn mower, because of the unguarded hole, was very hazardous and was not designed with safety in mind; that even in 1961, when this mower was designed and manufactured, this type of injury was foreseeable; and that such an injury could have been prevented by a simple piece of additional equipment costing less than one dollar per machine. Defendant's expert, on the other hand, testified that the mower was not defective since it surpassed the safety standards for lawn mowers prescribed by the American Standards Association, an organization composed of representatives from industry and government; and that the design improvements suggested by plaintiff's witness were not feasible.

At the close of all the evidence, plaintiff withdrew his counts based upon theories of negligence and breach of warranty and the case was sub-

mitted to the jury only on the count based upon the theory of strict liability. The trial judge concluded that there was insufficient evidence to warrant the giving of an instruction on assumption of risk and accordingly withdrew that issue from the jury. A verdict was returned in favor of defendants. Judgment was entered accordingly. This appeal followed.

Plaintiff first contends that the court erred in instructing the jury at Air Capital's request that plaintiff had the burden of proving that he was not aware of the defect in the lawn mower at the time of the accident. We set forth the instruction in pertinent part in the margin.[1] The portion challenged by plaintiff is in italics. Plaintiff argues that the jury was told that general awareness of a defect by an injured party bars recovery and that, therefore, the effect of the instruction was virtually to direct a verdict for defendants.

We held in *Greenman* v. *Yuba Power Products, Inc.* (1963) 59 Cal.2d 57, 62 [27 Cal.Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049] that: "[a] manufacturer is strictly liable in tort when an article he places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being." We reiterate, as we did in *Cronin* v. *J.B.E. Olson Corp.*, *supra*, *ante*, p. 121, that in products liability cases a plaintiff has met his burden if he establishes the ingredients of this formulation.

We can only speculate about the origin of the disputed requirement that plaintiff prove his unawareness of the defect. But it appears that the wellspring can be found in the following language at the end of the *Greenman* opinion: "To establish the manufacturer's liability it was sufficient that plaintiff proved that he was injured while using the Shopsmith in a way it was intended to be used as a result of a defect in design and manufacture *of which plaintiff was not aware* that made the Shopsmith unsafe for

---

[1]*"In this action, the plaintiff has the burden of establishing by a preponderance of the evidence all of the facts necessary to prove the following issues*: [Italics added.]

". . . . . . . . . . . . . . . . .

"1) That the mower manufactured and sold by the defendants was defective at the time of the accident, and

"2) That the defect, if any, existed at the time of manufacture and sale of the mower,

"3) *That the Plaintiff was not aware of the defect, if any, at the time of the accident, and* [italics added]

"4) That the plaintiff was using the mower in a manner in which it was intended to be used, and

"5) That said defect, if any, was a proximate cause of the injury to the plaintiff, and

"6) The nature and extent of the injuries, and

"7) The amount of damages."

its intended use." (59 Cal.2d at p. 64; italics added.) When California Jury Instructions-Civil (hereafter BAJI) was revised in 1964, its editors apparently based the products liability instruction on the *Greenman* language last quoted by us rather than on the *Greenman* language first quoted. The instruction, BAJI No. 218-A,[2] required that a plaintiff be unaware of the defect; the comments offer no explanation of this requirement. However, a statement therein to the effect that this instruction was based upon *Greenman* suggests to us a belief at the time that the second *Greenman* excerpt (59 Cal.2d at p. 64) stated the elements of a cause of action under strict liability. In the current edition of BAJI (5th ed. 1969), the products liability instructions not only require that a plaintiff be unaware of the defect but also that he bear the burden of proving his unawareness.[3] Again we are offered no explanation for the additional element.

Although several Court of Appeal decisions have likewise made reference to the second *Greenman* excerpt as stating the elements of the doctrine of products liability,[4] no case of this court has either referred to that language as the formulation of the rule of law or required the plaintiff to prove

[2]BAJI No. 218-A provides: "The manufacturer [retailer] of an article who places it on the market for use under circumstances where he knows that such article will be used without inspection for defects, is liable for injuries proximately caused by defects in the manufacture or design of the article *of which the user was not aware,* provided the article was being used reasonably for the purpose for which it was designed and intended to be used." (Italics added.)

[3]BAJI No. 9.00 provides in relevant part: "The [manufacturer] [retailer] of an article who places it on the market for use under circumstances where he knows that such article will be used without inspection for defects in the particular part, mechanism, or design which is claimed to have been defective, is liable for injuries proximately caused by defects in the manufacture or design of the article which caused it to be unreasonably dangerous and unsafe for its intended use and of which the user was not aware, provided the article was being used for the purpose for which it was designed and intended to be used.

". . . . . . . . . . . . . . . .

"The plaintiff has the burden of establishing by a preponderance of the evidence all of the facts necessary to prove each of the foregoing conditions."

BAJI No. 9.01 provides in relevant part: "The defendant . . . is not required under the law so to create and deliver its product as to make it accident proof; however, he is liable to the plaintiff for any injury suffered by him *if the plaintiff establishes by a preponderance of the evidence all of the facts necessary to prove each of the following conditions*: . . . [¶] *Third: The plaintiff was unaware of the claimed defect.*" (Italics added.)

[4]See, e.g., *Bennett* v. *International Shoe Co.* (1969) 275 Cal.App.2d 797, 798 [80 Cal.Rptr. 318]; *Gherna* v. *Ford Motor Co.* (1966) 246 Cal.App.2d 639, 649 [55 Cal. Rptr. 94]; *Martinez* v. *Nichols Conveyor etc. Co.* (1966) 243 Cal.App.2d 795, 798 [52 Cal.Rptr. 842]; *Preston* v. *Up-Right, Inc.* (1966) 243 Cal.App.2d 636, 639 [52 Cal.Rptr. 679]; *Erickson* v. *Sears, Roebuck & Co.* (1966) 240 Cal.App.2d 793, 798 [50 Cal.Rptr. 143].

that he was unaware of the defect.[5] Virtually all of the products liability cases in this court since *Greenman* have recognized the first excerpt quoted by us (59 Cal.2d at p. 62) as properly stating the applicable standard for strict liability.[6] We have found only two cases in this jurisdiction which have indicated that a plaintiff must not be aware of the defect.[7] Neither of these cases defines the phrase "defect . . . of which plaintiff was not aware" or gives any reason for this requirement for the plaintiff's recovery. Both merely cite the closing excerpt of *Greenman* (59 Cal.2d at p. 64) for the proposition asserted.

We are of the view that this last mentioned excerpt was not intended to state the elements of a cause of action under strict liability. Nor do we believe it was intended as a statement that the plaintiff must prove that he was not aware of the defect. A careful reading of *Greenman* makes these points obvious.

In *Greenman,* the plaintiff was struck and injured by a piece of wood which flew out of a lathe he was using. Inadequate set screws were used to hold together the parts of the machine, thereby allowing vibration to cause the tailstock of the lathe to release the piece of wood. This defect was latent and not one of which the plaintiff was aware. In concluding that the plaintiff had sufficiently established the manufacturer's liability we used language quoted *supra* and referred to as the second *Greenman* excerpt. (59 Cal.2d at p. 64.) Although this quotation may be interpreted as requiring the plaintiff to prove that he was not aware of the defect, a more sensible reading is that the facts plaintiff *did prove in that particular case* were sufficient to establish the manufacturer's liability. The sentence was intended not as a delineation of the essential elements of a products liability case, but as a statement that the plaintiff need not prove the additional elements of a cause of action in contractual breach of warranty in order to state a cause of action in strict liability. As we have noted, this court in an earlier portion of its *Greenman* opinion (59 Cal.2d at p. 62) had already set forth its formulation of the strict liability rule. Nowhere

---

[5]See *Jiminez* v. *Sears, Roebuck & Co.* (1971) 4 Cal.3d 379 [93 Cal.Rptr. 769, 482 P.2d 681]; *Pike* v. *Frank G. Hough Co.* (1970) 2 Cal.3d 465 [85 Cal.Rptr. 629, 467 P.2d 229]; *Price* v. *Shell Oil Co.* (1970) 2 Cal.3d 245 [85 Cal.Rptr. 178, 466 P.2d 722]; *Elmore* v. *American Motors Corp.* (1969) 70 Cal.2d 578 [75 Cal.Rptr. 652, 451 P.2d 84]; *Vandermark* v. *Ford Motor Co.* (1964) 61 Cal.2d 256 [37 Cal. Rptr. 896, 391 P.2d 168]; see also *Seely* v. *White Motor Co.* (1965) 63 Cal.2d 9 [45 Cal.Rptr. 17, 403 P.2d 145].

[6]*Pike* v. *Frank G. Hough Co., supra,* 2 Cal.3d 465, 475, refers to the Restatement Second of Torts, section 402A, as the standard for strict liability.

[7]*Bennett* v. *International Shoe Co., supra,* 275 Cal.App.2d 797, 799; *Preston* v. *Up-Right, Inc., supra,* 243 Cal.App.2d 636, 642.

in that formulation was it stated that the injured plaintiff has the burden of proving that he was not aware of the defect.

We are not content to leave the matter here. We must examine more closely the phrase "defect . . . of which plaintiff was not aware" (59 Cal.2d at p. 64) so as to determine whether it imposes any burden of proof on a plaintiff. The phrase has two possible meanings: (1) that the defect must be latent; or (2) that the defect must be one as to which plaintiff has not assumed the risk.

Defendants take the position that under California law a manufacturer is strictly liable in tort only for products which have latent defects. However, they have not called to our attention, nor has our independent research disclosed, any reported decisions in this state which have made a distinction between latent and patent defects in applying the doctrine of strict liability. It is true that, as defendants note, the great majority of reported decisions dealing with products liability have involved defects classifiable as latent. But none of these cases, although quoting the language found in the second excerpt from *Greenman, limit* this type of liability to hidden defects.

Indeed, we believe that if a latent-patent distinction ever had any vitality, it was laid to rest in *Pike* v. *Frank G. Hough Co., supra,* 2 Cal.3d 465, 473-474: "Defendant contends that the danger of being struck by the paydozer was a patent peril and, therefore, that it had no duty to install safety devices to protect against an obvious danger. We do not agree. . . . [¶] [E]ven if the obviousness of the peril is conceded, the modern approach does not preclude liability solely because the danger is obvious." This language is found in our discussion of the manufacturer's liability for *negligence* in the design of the piece of construction equipment involved in that case. Immediately thereafter, however, we upheld the sufficiency of a second count based on the theory of strict liability. Our following discussion of the concept of strict liability, as well as the general tenor of our treatment of both bases of liability, strongly indicates our disavowal of any latent-patent distinction in the application of that theory. In upholding this basis of recovery, we made reference to the first *Greenman* excerpt and to section 402A of the Restatement Second of Torts,[8] neither of which requires proof by a plaintiff that he was unaware of a

---

[8]Section 402A provides: "One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if [¶] (a) the seller is engaged in the business of selling such a product, and [¶] (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold."

claimed defect. Additionally we cited with approval *Wright* v. *Massey-Harris, Incorporated* (1966) 68 Ill.App.2d 70 [215 N.E.2d 465], which allowed a cause of action in strict liability for a patent defect in design. (See also *Thompson* v. *Package Machinery Co.* (1971) 22 Cal.App.3d 188, 192-193 [99 Cal.Rptr. 281].)

■ Furthermore, the policy underlying the doctrine of strict liability compels the conclusion that recovery should not be limited to cases involving latent defects. "The purpose of such liability is to insure that the costs of injuries resulting from defective products are borne by the manufacturers that put such products on the market rather than by the injured persons who are powerless to protect themselves." (*Greenman* v. *Yuba Power Products, Inc., supra,* 59 Cal.2d 57, 63.) Requiring the defect to be latent would severely limit the cases in which the financial burden would be shifted to the manufacturer. It would indeed be anomalous to allow a plaintiff to prove that a manufacturer was negligent in marketing an obviously defective product, but to preclude him from establishing the manufacturer's strict liability for doing the same thing. The result would be to immunize from strict liability manufacturers who callously ignore patent dangers in their products while subjecting to such liability those who innocently market products with latent defects.

On the other hand, as plaintiff recognizes, the awareness language in the second *Greenman* excerpt is not meaningless. It declares in effect that a person urging strict liability must not have assumed the risk of the defective product. Plaintiff argues that assumption of the risk is a defense and that it was therefore improper to instruct the jury that he had the burden of proving that he had not assumed the risk. We agree.

■ Ordinary contributory negligence does not bar recovery in a strict liability action. "The only form of plaintiff's negligence that is a defense to strict liability is that which consists in *voluntarily and unreasonably proceeding to encounter a known danger,* more commonly referred to as assumption of risk. For such a defense to arise, the user or consumer must become aware of the defect and danger and still proceed unreasonably to make use of the product." (Italics added.) (*Barth* v. *B. F. Goodrich Tire Co.* (1968) 265 Cal.App.2d 228, 243 [71 Cal.Rptr. 306]; see also *Ruiz* v. *Minnesota Mining & Mfg. Co.* (1971) 15 Cal.App.3d 462, 470 [93 Cal.Rptr. 270]; Prosser, *Strict Liability to the Consumer in California* (1966) 18 Hastings L.J. 9, 48-50.)[9] However, the defendant, not the plain-

---

[9]According to the Restatement Second of Torts, section 402A, comment n; "the form of contributory negligence which consists in voluntarily and unreasonably proceeding to encounter a known danger, and commonly passes under the name of

tiff, has the burden of establishing such a defense (*Vierra* v. *Fifth Avenue Rental Service* (1963) 60 Cal.2d 266, 270 [32 Cal.Rptr. 193, 383 P.2d 777]; Prosser, Law of Torts (4th ed. 1971) p. 455).

■ Applying the foregoing rationale to the instant case we conclude that it was error to instruct the jury that plaintiff had the burden of proving that he was not aware of the defect in the lawn mower at the time of the accident. As we have explained, such an instruction in effect told the jury either that plaintiff was required to prove that the defect was latent or that plaintiff was required to prove that he had not assumed the risk of the defect. Under either interpretation, the instruction was an incorrect statement of the law.

■ Defendants contend that plaintiff is estopped from asserting this error as a ground for reversal because he himself had invited the error by requesting a substantially similar instruction. (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 267, p. 4258.) The erroneous instruction of which plaintiff complains (see fn. 1, *ante*) *required plaintiff to prove* that he was unaware of the defect. As we have explained, under either interpretation this instruction was erroneous. On the contrary, the instruction offered by plaintiff, BAJI No. 218-A (see fn. 2, *ante*) *did not require plaintiff to prove* that he was unaware of the defect. The instruction given at defendant's request was substantially different from the one offered by plaintiff in that it advised the jury that plaintiff had the burden of proving that he was not aware of the defect. It would be inequitable to apply the doctrine of invited error because plaintiff did not request an erroneous instruction on burden of proof.

"Where it seems probable that the jury's verdict may have been based on

assumption of risk, is a defense under this Section as in other cases of strict liability. If the user or consumer discovers the defect and is aware of the danger, and nevertheless proceeds unreasonably to make use of the product and is injured by it, he is barred from recovery."

Witkin similarly defines the assumption of risk defense to strict liability as "where the plaintiff has voluntarily and unreasonably subjected himself to a known danger; e.g., by continuing to operate or use a product after discovery of its defective condition." (2 Witkin, Summary of Cal. Law (7th ed. 1969 Supp.) Torts, § 388N, p. 775.) The same formula describes the assumption of risk defense to strict liability for dangerous animals and ultra-hazardous activities (see Rest.2d Torts, § 484(2); Rest., Torts, §§ 515, 524; 2 Witkin, Summary of Cal. Law (7th ed. 1960) Torts, § 381, p. 1584, § 385, p. 1590.)

Justice Traynor has noted that "[t]he role of assumption of risk in products liability cases is properly a limited one." He stated, "[w]ere a consumer deemed to assume all commonly known risks, we would come full circle round to the problems generated by the disclaimer of warranty in the implied warranty cases." (Traynor, *The Ways and Meanings of Defective Products and Strict Liability* (1965) 32 Tenn. L.Rev. 363, 371.)

the erroneous instruction, prejudice appears, and this court should not speculate upon the basis of the verdict." (*Vistica* v. *Presbyterian Hospital* (1967) 67 Cal.2d 465, 471 [62 Cal.Rptr. 577, 432 P.2d 193]; *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].) ■ Since the defect in this case was patent, it seems probable that the jury may have based its verdict upon the instruction erroneously requiring that plaintiff prove that the defect was latent. Accordingly, we conclude that the court committed prejudicial error and that the judgment must be reversed.

Finally, because they may arise on retrial, we dispose of two additional contentions made by plaintiff.

Plaintiff contends that the trial court erred in admitting in evidence over objection a specimen of a safety leaflet claimed to have been shipped by the manufacturer with each lawn mower. Defendant manufacturer, in its answer to written interrogatories, denied it would contend that a safety leaflet accompanied the lawn mower sold to Mr. Dunn. Plaintiff asserts that the introduction into evidence of this safety leaflet constituted surprise and was consequently prejudicial to the plaintiff's case. It is a sufficient answer to plaintiff's contention that on retrial plaintiff will no longer be able to object to this evidence since he has now had ample time to prepare for its introduction. (Witkin, Cal. Evidence (2d ed. 1966) § 311, p. 274; see *Newsum* v. *Pennsylvania R. Co.* (S.D.N.Y. 1951) 97 F.Supp. 500, 502.)

■ We consider plaintiff's contention that the trial judge committed error in refusing to receive in evidence certain articles and statistical surveys dealing with the allegedly great number of injuries occurring from the use of rotary power lawn mowers. The articles in question were published in Reader's Digest, Today's Health, and Consumer Bulletin magazines. The statistical surveys were included in a booklet entitled, "Accidental Injuries Associated with Rotary Lawn Mowers," compiled by an officer of the Division of Accident Prevention, Public Health Service, United States Department of Health, Education and Welfare, and published by the Outdoor Power Equipment Institute in cooperation with the National Safety Council.[10]

The trial judge properly ruled that the introduction of any of these documents was prohibited by the hearsay rule (Evid. Code, § 1200). Plaintiff makes no claim that they were admissible under any recognized excep-

---

[10]The "Final Report of the National Commission on Product Safety," also lodged with us, bears a June 1970 publication date, and therefore could not have been introduced at the trial in 1969.

tion to that rule. ■ Nor was it error for the judge to refuse the introduction of any of these materials during the cross-examination of defendant's expert witness. Where an expert witness testifies in the form of an opinion, Evidence Code section 721 permits cross-examination in regard to the content or tenor of scientific, technical or professional texts or similar publications if the expert referred to, considered, or relied upon such publications in forming his opinion. Defendant's expert witness testified that he had not considered, referred to, or relied upon the materials plaintiff sought to have introduced. The ruling was therefore proper.

■ Plaintiff also attempted to introduce the above articles and surveys during the testimony of his own expert. Evidence Code section 801 limits an expert's testimony in the form of an opinion "to such an opinion as is: . . . (b) Based on matter (including his special knowledge, skill, experience, training, and education) perceived by or personally known to the witness or made known to him at or before the hearing, whether or not admissible, that is of a type that reasonably may be relied upon by an expert in forming an opinion upon the subject to which his testimony relates, unless an expert is precluded by law from using such matter as a basis for his opinion." Under this standard, the trial judge's exclusion of the articles from Reader's Digest, Today's Health and Consumer Bulletin was clearly proper, because none of those periodicals constitute the type of professional technical literature "that reasonably may be relied upon by an expert in forming an opinion" (Evid. Code, § 801, subd. (b)).[11]

The booklet on "Accidential Injuries Associated with Rotary Lawn Mowers" presents a closer question. The short answer is that the copy of the pamphlet lodged with us contains no indication that it was ever offered at trial; nor has plaintiff directed our attention to any part of the record showing that a formal offer of its introduction was made. According to the record, there was discussion between the court and counsel outside the presence of the jury in regard to the introduction of the booklet containing the statistical surveys as well as the introduction of the other articles, but the booklet was never even marked for identification as were the other publications. If plaintiff's expert seeks to rely upon this booklet upon retrial, plaintiff will have to establish, among other requirements (see Evid. Code, § 801 and Comment of the Law Revision Commission), that it is the type of evidence "that reasonably may be relied upon by an expert" in this field. It will be within the discretion of the trial judge to make this determination, considering on the one hand the fact that surveys conducted

---

[11]We have assumed for the purpose of this discussion that plaintiff formally offered these publications in evidence, although the record is far from clear on this point.

by others are generally considered too unreliable for introduction, but, on the other hand, that statistics gathered by others often constitute a great portion of the facts upon which experts in many fields must rely (Witkin, Cal. Evidence, *supra,* § 410, p. 368, citing, inter alia, *Forrest* v. *Fink* (1925) 71 Cal.App. 34, 39-41 [234 P. 860]).

In view of our foregoing conclusions, it is unnecessary for us to consider other contentions made by plaintiff.

The judgment is reversed.

Wright, C. J., McComb, J., Peters, J., Tobriner, J., Mosk, J., and Burke, J., concurred.