[No. A016288. First Dist., Div. Two. July 25, 1986.]

RUTH C. BRAKE, as Administratrix, etc., Plaintiff and Appellant, v. BEECH AIRCRAFT CORPORATION, Defendant and Respondent.

CARROLL JUNE McCARTER, as Administratrix, etc., Plaintiff and Appellant, v. BEECH AIRCRAFT CORPORATION, Defendant and Respondent.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rule 976(b), this opinion is certified for publication with the exception of parts I-VII.

**COUNSEL**

Jerome J. Berchin, Berchin & Berchin, Daniel C. Cathcart, Deborah Mitzenmacher and Magana, Cathcart, McCarthy & Pierry for Plaintiffs and Appellants.

William H. Owen, Owen, Melbye & Rohlff, Robert S. Wolfe and Morris, Polich & Purdy for Defendant and Respondent.

**OPINION**

**SMITH, J.**—The 1976 crash of a twin-engine aircraft, a Beechcraft Baron 58, took the lives of William P. Brake and Donald E. McCarter. Their widows, as administrators of the estates, brought independent actions for wrongful death against the plane's manufacturer, Beech Aircraft Corporation, and the actions were consolidated for jury trial. Plaintiff widows (plaintiffs) appeal from a judgment entered on a special verdict in favor of defendant manufacturer (Beech) and from a subsequent order denying their motion to tax costs.

### BACKGROUND

The aircraft crashed in rugged high-desert terrain north of a ridge of the San Gabriel Mountains, near the town of Pearblossom in Los Angeles

County, about one hour after a 9:05 a.m. takeoff from Hawthorne Municipal Airport. Eyewitnesses attracted by an "oscillating" engine sound saw the plane descend, with nose tilted downward, in a series of 13 to 15 tight circles to the right (pivoting on the right wing) just before impact.

Decedents both worked for Northrop Aircraft Corporation (Northrop), which owned the plane.[1] McCarter, a certificated military jet fighter plane (F-5) instructor working in Saudi Arabia, had come to California for training toward a multiengine rating in order to fly such a plane in Saudi Arabia for Northrop. Not yet certified, but having logged 14 hours of "dual" time in the aircraft (i.e., with a copilot), McCarter, together with Brake, the manager of flight support operations for Northrop, took off on the morning of the accident for a "pilot check flight"—an opportunity for Brake to evaluate McCarter's training progress. McCarter was in the pilot's and Brake in the copilot's seat. The plane was equipped with dual controls so that it could be flown from either position. Brake did not have an instructor's rating but had logged 225 hours in the plane and was an experienced commercial pilot.

It was undisputed at trial that the aircraft stalled and then entered into a fully developed "flat spin" from which it never recovered.[2] The crucial question was why or how.

Plaintiffs attempted to prove negligent or defective design. To summarize, their evidence showed possible negligence or defect in the selection of the Baron 58's airfoils and its rudder configuration, which assertedly rendered the aircraft unusually susceptible to spins and difficult to control once a spin developed. They relied as well on claimed violations of federal aircraft regulations governing standards for maneuverability, stall warnings and single-engine-out stall recovery. They further maintained that the aircraft's operating manual inadequately warned of stall/spin characteristics and recovery and that Beech inadequately tested the aircraft. Their factual theory of the accident was that the decedents were flying with reduced power in the left engine (probably to simulate single-engine-out conditions) when they inadvertently dipped below minimum control speed, stalled and rapidly entered the fatal spin.

---

[1] An action by Northrop against Beech to recover damages for loss of the plane was tried along with plaintiffs' wrongful death actions. Northrop, like plaintiffs, appealed from the judgment herein but has since abandoned its appeal.

[2] A "stall" is a loss of lift on the wing caused by either inadequate airspeed or exceeding the wing's critical angle of attack. A spin cannot occur unless the plane first stalls. Because a fully developed spin in a twin-engine plane is potentially impossible to recover from, early recovery from the stall or spin is critical.

Beech countered with evidence that the Baron 58 has the same airfoil and tail design found on other twin-engine aircraft, is FAA (Federal Aviation Agency) certified as complying with federal regulations, has adequate stall warnings, is not unduly prone to spin, recovers easily from "incipient" spins,[3] and had a safety information booklet (distributed to owners before the accident and in response to an FAA communique) that specially warned of potential spin problems and instructed on recovery techniques.

Beech's theory was pilot negligence or error. The relative inexperience of both decedents with the Baron 58, their apparent use of asymmetric (simulated single-engine) power before the crash and the existence of strong turbulence in the San Gabriel Mountains that morning[4] suggested the use of improper recovery techniques (perhaps those appropriate to the F-5 fighter) following a single-engine stall brought on or aggravated by winds.[5] Examination of the wreckage showed the aircraft to have been trimmed for "blue line speed," indicating a safe single-engine speed and thus tending to rebut plaintiffs' theory of inadvertent loss of airspeed.

The jury returned a special verdict in favor of Beech, finding no negligence and no defect. Judgment on the verdict was entered on November 24, 1981, and Beech thereafter filed a memorandum for costs totaling over $107,000. Plaintiffs timely noticed motions for judgment notwithstanding the verdict, for new trial, and to tax costs. At a combined hearing, the superior court denied the motions for new trial and judgment notwithstanding the verdict and took the remaining motion under submission. By order of February 8, 1982, the court denied the motion to tax costs and allowed, as reasonable and necessary, $45,470.70 of the costs claimed.

Plaintiffs timely appeal from both the judgment and the order denying the motion to tax costs.

---

[3]An "incipient" spin is what occurs before a "fully developed" (or "steady state") spin.

[4]An "AIRMET" (small aircraft weather advisory) in effect when the aircraft took off warned of moderate turbulence within 5,000 feet of terrain, mainly over mountains, with strong updrafts and downdrafts on south and west slopes. That advisory was cancelled less than one-half hour before the accident and upgraded to a "SIGMET" (an advisory to all aircraft) warning of locally severe turbulence below 15,000 feet, again mainly over mountains and with updrafts and downdrafts on south and west slopes. Expert testimony showed a likelihood of such updrafts and downdrafts ("mountain wave" conditions) on *all* mountain slopes.

[5]The Baron 58, being certified by the FAA as a "normal category" aircraft, bears a placard warning against intentional spins. The FAA does not require "placarded" aircraft like the Baron 58 to be spin tested for certification. The placard advises pilots of that fact and warns them to assume that the aircraft may become uncontrollable in a spin. An FAA advisory circular warns flight test instructors and test applicants not to demonstrate single-engine stalls in pilot flight tests—that such maneuvers should be practiced only by qualified engineering test pilots.

APPEAL

I-VII*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

VIII

█  "Evidence of prior accidents is admissible to prove a defective condition, knowledge, or the cause of an accident, provided that the circumstances of the other accidents are similar and not too remote. [Citation.]" (*Elsworth* v. *Beech Aircraft Corp.* (1984) 37 Cal.3d 540, 555 [208 Cal.Rptr. 874, 691 P.2d 630].) Plaintiffs claim cumulative prejudice from several rulings denying the admission of other-accidents evidence.

█  One ruling granted Beech's motion to exclude a computer-generated statistical analysis comparing accident rates for the Baron with rates for other aircraft, on a per-flight-hour basis. Statistician Brent Silver, an expert for plaintiffs, prepared the analysis from National Transportation Safety Board (NTSB) data on domestic aviation accidents. After hearing an extensive offer of proof through testimony by Silver, the court granted the motion on grounds that the proffered evidence was "hearsay upon hearsay, unreliable, speculative [and] conjectural." Plaintiffs have not presented arguments that surmount those problems. Error has not been shown. (Cf. *Luque* v. *McLean* (1972) 8 Cal.3d 136, 147-148 [104 Cal.Rptr. 443, 501 P.2d 1163].)

█  Plaintiffs also claim error in the exclusion of five accident report memoranda, produced by Beech during discovery, and three NTSB publications.

Taking first the Beech memoranda, plaintiffs failed to lay a foundation of similarity between the accidents discussed therein and the accident in this case. Descriptions of flight attitude, trim settings, engine power, loading, weather conditions, altitudes, feathering, etc., were widely varied. In addition, there are complex multiple hearsay problems in the documents. Plaintiffs cannot overcome these myriad problems by relying on similarity of airfoils or tail design. Similarly,. there was no foundation laid to show similarity as to the accidents referred to in the NTSB documents. All of this evidence was presented for the first time at the close of plaintiffs' case, without calling witnesses.

*See footnote, *ante,* page 930.

Despite the lack of foundation to show similarity, however, those prior accidents involving stall/spins of Beech Baron 58's could have been admitted for the limited purpose of showing that Beech had notice of a dangerous condition. "For this purpose, '"'all that is required . . . is that the previous injury should be such as to attract the defendant's attention to the dangerous situation. . . .'"' [Citation.]" (*Elsworth* v. *Beech Aircraft Corp., supra,* 37 Cal.3d 540, 555.) Here, as in *Elsworth*, "[t]here can be no question that the prior accidents should have alerted Beech to the faulty spinning characteristics of the [aircraft]. It was contrary to FAA regulations to spin . . . the Baron . . ., and Beech should therefore have been alerted to the fact that the spinning of the airplanes in the prior accidents was unintentional and may have been due to a defect in their design." (*Ibid.,* fn. omitted.)[16]

Nevertheless, because Beech had requested that the evidence be excluded under Evidence Code section 352 and because the court explained that its ruling was based in part on the risk of prejudice from undue consumption of time, we could not find exclusion of the evidence to be error unless an abuse of discretion appeared under all the circumstances. (*Simmons* v. *Southern Pac. Transportation Co.* (1976) 62 Cal.App.3d 341, 365 [133 Cal.Rptr. 42].)

Assuming, without deciding, that the court did abuse its discretion, however, we would not find reversible error on this record. (Evid. Code, § 354; Cal. Const., art. VI, § 13; *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].) The accidents would have been admissible only to show *knowledge* of a dangerous condition, not the existence of one, and it does not appear reasonably probable that the jury's verdict was predicated on doubt over the element of notice. Beech never disputed that it knew the Baron 58 would quickly develop a full spin if stalled and not promptly recovered. There was no conflict in the evidence—all experts agreed that an unrecovered spin in the Baron 58 could be irreversible. The FAA materials were to the same effect, as was the placard on the plane itself. Beech's defense in this regard, rather, was that the plane was "docile" and easy to recover if proper techniques were employed and that its published materials adequately warned against the plane's spinning tendencies. In other words, the focus of the trial was on whether the plane's stall/spin characteristics constituted a dangerous condition, not whether Beech knew of them. By returning its special verdict of no negligence and no defect, the jury appears

---

[16]For purposes of our analysis, it is not necessary to decide whether the Baron 55 or other Beech models are similar enough to the Baron 58 to warrant admission of stall/spin accidents of those planes on the question of notice.

to have concluded that those characteristics were not unusually dangerous and that the efforts of Beech to warn against them were adequate.[17]

## IX

Of the $45,470 awarded to Beech as costs, plaintiffs challenge all but about $4,000, representing jury and filing fees.

The court made its award pursuant to Code of Civil Procedure section 998, subdivision (c), which provides: "If an offer made [pursuant to this section] by a defendant is not accepted and the plaintiff fails to obtain a more favorable judgment, the plaintiff shall not recover his costs and shall pay the defendant's costs from the time of the offer. In addition, . . . the court, in its discretion, may require the plaintiff to pay the defendant's costs from the date of filing of the complaint and a reasonable sum to cover costs of the services of expert witnesses, who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, the preparation or trial of the case by the defendant."  **(4)** **(See fn. 18.)**  Plaintiffs rejected Beech's section 998 settlement offer of $75,000.01 made at the start of trial.[18]

The court determined that each allowed item was reasonable and necessarily incurred in defense of the action. ■ Those conclusions and the determination of what items were allowable under the statute were discretionary decisions that cannot be upset without a showing of abuse of discretion. (*Moss* v. *Underwriters' Report, Inc.* (1938) 12 Cal.2d 266, 275-276 [83 P.2d 503]; *Huber, Hunt & Nichols, Inc.* v. *Moore* (1977) 67 Cal.App.3d 278, 315 [136 Cal.Rptr. 603]; *Whitney* v. *Whitney* (1958) 164 Cal.App.2d 577, 585 [330 P.2d 947].)

■ The largest sum challenged is a total of $22,720.60 for aircraft rental and insurance needed to flight test and videotape the Baron 58. Plaintiffs challenge the necessity for those expenses. However, as Beech notes, the test flights and videotaping were essential at trial; plaintiffs incurred the

---

[17]Plaintiffs emphasized in argument to the jury that Beech had knowledge from its awareness of the T-42A tests, its possession of a copy of the resulting report and its revision of the T-42A manual. They also relied on the circumstantial facts that Beech put out the safety booklet and developed a VSSE (velocity safe single engine) speed for the plane.

[18]According to plaintiffs' written motion to tax costs, the offer was made on October 7, 1981, and the transcript of the hearing on the motion confirms the amount of the offer. Thus, plaintiffs' claim that the record does not reflect that an offer was made is frivolous.

Also frivolous is their alternative claim that some of the cost items are unsupportable, even under section 998, because Beech failed to show that those costs were incurred *after* the offer. The statute, quoted above, provides for discretionary awards of costs incurred anytime after the action was *filed*.

same type of expenses for their own experts to test the plane. Finally, while plaintiffs query in the abstract why an aircraft manufacturer like Beech had to rent "one of its own" aircraft, they do not direct our attention to any showing in the trial court that the expense was not necessary. It was plaintiffs' burden, in the face of Beech's verified costs memorandum, which established prima facie evidence that the expenses were necessarily incurred, to overcome that showing. (*Haydel* v. *Morton* (1937) 18 Cal.App.2d 695, 696 [64 P.2d 954].) They did not. We cannot assume that Beech had a Baron 58 available to it for less than the cost it claimed.

Similarly, plaintiffs did not make any showing of how the sums claimed for videotape equipment rental (before and at trial) were unnecessary or excessive, as they now maintain, or how the two fees paid to expert White were cumulative.

■ Next, plaintiffs are legally mistaken to assert that costs of deposing experts are "unnecessary" where their testimony is ultimately not disputed at trial. The need for a deposition must be viewed from the pretrial vantage point of a litigant who does not yet know whether or not to oppose the expert's opinions. (*Moss* v. *Underwriters' Report, Inc., supra,* 12 Cal.2d 266, 275-276.) Plaintiffs do not explain why Beech should have been required to await surprise at trial—their apparent position on appeal. It was their burden to show that the depositions were unnecessary. (*County of Kern* v. *Ginn* (1983) 146 Cal.App.3d 1107, 1113 [194 Cal.Rptr. 512].) Moreover, plaintiffs are factually mistaken in asserting that their experts were uncontradicted at trial.

■ Plaintiff Brake asserts that she should not have been required to pay witness fees for two experts designated only by plaintiff McCarter. However, the court had discretion under Code of Civil Procedure section 998 to apportion those costs between plaintiffs (cf. *Rappenecker* v. *Sea-Land Service, Inc.* (1979) 93 Cal.App.3d 256, 265 [155 Cal.Rptr. 516] [plaintiff in one of six consolidated actions entitled to recover full costs so long as defendant not charged more than once]) and apparently chose to do that here. Similarly, we believe that the court had discretion to charge plaintiffs with the witness fee, costs of service of process, and deposition costs of an expert (Northrop employee Harry O'Connor) designated by plaintiff-in-intervention Industrial Indemnity Company (IIC), even though IIC settled shortly before trial.

Finally, plaintiffs do not even attempt to explain by what calculations they conclude that witness fees and mileage expenses were excessive under

Government Code sections 68092.5 and 68093. (Code Civ. Proc., § 998, subd. (g).)[19]

## X

As a final matter, we address an issue of collateral estoppel lately urged upon us by plaintiffs. In the week before oral argument on this appeal, plaintiffs filed an application for leave to file a supplemental brief in which they contend that Beech should be barred by the judgment in *Elsworth* v. *Beech Aircraft Corp., supra,* 37 Cal.3d 540 (hereafter *Elsworth*), from maintaining that the Baron 58 is not defectively designed.

We hereby grant their application and will consider the merits of their supplemental briefing,[20] but we do so convinced that denial of the application would be well within our discretion in light of the timing and other circumstances of the application. This case has been fully briefed on appeal since January 1985. The *Elsworth* decision became final in our Supreme Court that same month (Cal. Rules of Court, rule 24(a)) and was extensively cited in plaintiffs' response brief, on issues other than collateral estoppel. The United States Supreme Court subsequently denied certiorari on May 13, 1985 (471 U.S. 1110 [85 L.Ed.2d 861, 105 S.Ct. 2345]), leaving the case final for all purposes; yet plaintiffs waited nearly 11 months, until the eve of oral argument in April 1986, to raise the collateral estoppel issue. At oral argument, counsel for plaintiffs' only explanation for the delay was that they had not realized the collateral estoppel significance of *Elsworth* earlier. That is hard to accept, however, especially since Mr. Cathcart, trial and appellate counsel for plaintiff Brake herein, was also counsel for the successful plaintiffs-respondents in *Elsworth*. (*Elsworth, supra,* 37 Cal.3d 540, 545.)

■ It is true, of course, that collateral estoppel may be raised for the first time on appeal when, as here, the judgment in the other action becomes final pending appeal and there was thus no opportunity to raise the issue in the trial court. (*First N.B.S. Corp.* v. *Gabrielsen* (1986) 179 Cal.App.3d 1189, 1195 [225 Cal.Rptr. 254], and cases cited; *Bates* v. *John Deere Co.* (1983) 148 Cal.App.3d 40, 47-48 [195 Cal.Rptr. 637]; cf. *Domestic & Foreign Pet. Co., Ltd.* v. *Long* (1935) 4 Cal.2d 547, 562 [51 P.2d 73] [res

---

[19]The assorted remaining arguments directed against the costs award are unsupported and meritless.

[20]To date, we have limited written opposition from Beech to the question of whether the application should be granted. Beech thus has not had an opportunity to brief its opposition to the collateral estoppel contention on the merits. As will appear, however, the issue is easily resolved against plaintiffs. Thus, and in order to expedite our decision, we proceed without further briefing on the issue.

judicata].) It would also appear true that the right to assert collateral estoppel, being waivable, could properly be deemed waived by plaintiffs' lack of diligence in asserting their right in this case. (Cf. *Domestic & Foreign Pet. Co., Ltd.* v. *Long, supra,* at pp. 562-563 [res judicata claim deemed waived by appellant's failure to furnish documentary proof of the prior judgment].)

■■■ We nevertheless consider the claim and find it to be meritless. *Elsworth,* a wrongful death action arising out of the stall-spin crash of a Travel Air model twin-engine plane, was tried to a jury on a theory, among others, that the plane's wing (airfoil) was defectively designed in that it caused the plane to easily enter nonrecoverable flat spins under single-engine flying conditions (*Elsworth, supra,* 37 Cal.3d 540, 546 & fn. 4)—one of the same theories presented in the instant case with respect to the Baron 58 model. Plaintiffs argue that because the Supreme Court in *Elsworth* upheld a jury verdict finding Beech liable, and since the airfoil design is identical on the Travel Air and Baron 58 models, we should find Beech collaterally estopped to deny the claimed airfoil defect in the Baron 58 and remand the case for the limited purpose of trying the issues of causation and damages.

It is not so simple. In order to prevail in their collateral estoppel claim, plaintiffs must establish, among other things, that the issue in *Elsworth* was both *necessarily decided* and *identical* to the issue in this case. (*Producers Dairy Delivery Co.* v. *Sentry Ins. Co.* (1986) 41 Cal.3d 903, 910 [226 Cal.Rptr. 558, 718 P.2d 920]; *Stout* v. *Pearson* (1960) 180 Cal.App.2d 211, 216 [4 Cal.Rptr. 313].) Without passing on the perhaps more difficult question of whether the two models of aircraft in these two cases perform the same by virtue of having the same airfoil and therefore posed "identical" issues (despite other design differences),[21] we conclude that plaintiffs cannot establish that the *Elsworth* jury necessarily found the Travel Air airfoil to be defectively designed.

---

[21]The parties agree that the Travel Air is a predecessor model to the Baron 58, and the record discloses that the two planes are not, apart from the airfoils used, identical. In fact, a law and motion ruling by the superior court in this case denied plaintiffs the right to certain discovery on the Travel Air and other Beech twin-engine planes precisely because of *dis-similarities.*

As plaintiffs note, the court in *Elsworth* upheld the trial court's admission of evidence of other accidents, including 15 involving Barons, on the issue of notice of a dangerous condition. In upholding the ruling, the Supreme Court commented that the trial court could have relied on certain expert testimony that the two planes' common airfoils (assertedly a design defect) produced "identical single engine stall-spin characteristics." (*Elsworth, supra,* 37 Cal.3d 540, 555; see part VIII, *ante,* this opinion.) However, the fact that *some* testimony in *Elsworth* could provide substantial evidentiary support for a finding of "similarity" of design defect in that case (*Elsworth, supra,* at p. 555), does not necessarily determine that the issues were "identical," as required for collateral estoppel. The trial court in *Elsworth* was not concerned with the higher standard of "identical" issues.

*Elsworth* was submitted to the jury on several alternative theories of recovery (*Elsworth, supra,* 37 Cal.3d 540, 546, fn. 4), and the jury returned a general verdict (*id.,* at p. 547) from which we cannot tell which theory or theories were found applicable. This is critical because one of the theories was "negligence for Beech's failure to adequately warn pilots of the Travel Air's 'undue spinning tendencies' during single engine stalls." (*Id.,* at p. 546, fn. 4.) If the jury relied on that theory alone—a possibility we cannot rule out—then the airfoil was not necessarily found to be defectively designed. ▪ In failure-to-warn cases, the jury "'must decide whether a product *flawlessly designed and produced* may nevertheless possess such risks to the user without a suitable warning that it becomes "defective" simply by the absence of such a warning.'" (Italics added.) (*Finn* v. *G. D. Searle & Co.* (1984) 35 Cal.3d 691, 699 [200 Cal.Rptr. 870, 677 P.2d 1147], quoting this court's decision in *Cavers* v. *Cushman Motor Sales, Inc.* (1979) 95 Cal.App.3d 338, 347 [157 Cal.Rptr. 142]; *Dosier* v. *Wilcox-Crittendon Co.* (1975) 45 Cal.App.3d 74, 80 [119 Cal.Rptr. 135]; *Canifax* v. *Hercules Powder Co.* (1965) 237 Cal.App.2d 44, 53 [46 Cal.Rptr. 552].) ▪ Because we cannot tell from the general verdict in *Elsworth* that the airfoil was necessarily determined to be defectively designed, the doctrine of collateral estoppel cannot apply. (*Stout* v. *Pearson* (1960) 180 Cal.App.2d 211, 216 [4 Cal.Rptr. 313]; see 7 Witkin, Cal. Procedure (3d ed. 1985) Judgment, § 271, pp. 712-713.)

## DISPOSITION

Finding no prejudicial error at trial and no abuse of discretion or other error in the award of costs, we affirm both the judgment on special verdict and the order re motion to tax costs.

Kline, P. J., and Rouse, J., concurred.

A petition for a rehearing was denied August 25, 1986.