[Civ. Nos. 13935, 13991. Third Dist. Jan. 5, 1978.]

JANICE E. CORRELL, a Minor, etc., et al.,
Plaintiffs and Appellants, v.
CLARK EQUIPMENT COMPANY, Defendant,
Cross-complainant and Appellant;
M. L. DUBACH, INC., et al., Defendants,
Cross-defendants and Respondents.

**COUNSEL**

Trezza, Ithurburn, Keeley, Steidlmayer & Bower, Trezza, Ithurburn, Keeley & Steidlmayer, Changaris, Trezza, Ithurburn, Keeley & Steidl-

mayer, Keeley, Guthrie & Ruddick, Terence J. Keeley, Mark G. Steidlmayer, John J. Trezza, Fred B. Ithurburn and Joel T. Guthrie for Plaintiffs and Appellants.

Tweedy, Noonan & Ferris, Tweedy, Ferris & Duncan, Tweedy, Dawson, Duncan, Hunt & Ball, Thomas A. Tweedy and Frank Ferris for Defendant, Cross-complainant and Appellant.

George K. Littlefield for Defendants, Cross-defendants and Respondents.

## OPINION

**PUGLIA, P. J.**—Plaintiffs, the surviving wife and minor children of William Correll, a workman killed by a large, earthmoving machine, designed, manufactured, and leased by defendant Clark Equipment Company (Clark), appeal from judgment for defendant Clark after a jury trial in this wrongful death action. Clark maintains a protective cross-appeal from the dismissal (nonsuit) of its cross-complaint against Correll's employer, M. L. Dubach, Inc., and Employers Insurance of Wausau (Employers), Dubach's workers' compensation insurance carrier. The cross-complaint alleges as a proximate cause of Correll's death Dubach's negligent omission to provide him with a safe place to work (see *Witt* v. *Jackson* (1961) 57 Cal.2d 57, 71-73 [17 Cal.Rptr. 369, 366 P.2d 641]). Consolidated with these appeals is plaintiffs' appeal from the trial court's order denying them reasonable expenses, costs and attorney's fees and allowing in full Employers' lien against proceeds of a pretrial settlement obtained from the State of California (State), a codefendant with Clark in the main action. The settlement disposed of the minor plaintiffs' negligence action against the State and of the State's cross-complaint for indemnity against Dubach.

Plaintiffs' decedent, William Correll, was employed by Dubach as a dirt foreman and grade checker on the Interstate 880 highway project near Sacramento. He supervised the operation of a road grader and a Michigan scraper, the earthmoving machine here in question. At the time of his death, he and his crew were constructing a ditch three and one-half feet deep and approximately nine feet wide, slightly wider than the scraper itself.

On the day of the accident, Correll and Willingham, the scraper operator, planned to clean out the dirt ripped up by the road grader and complete a section of the ditch. Thereafter, Willingham backed the scraper into the ditch. At that time he noticed Correll standing out of the ditch on the south bank. Moving at the speed of a slow walk and looking back over his left shoulder along the north edge of the ditch, Willingham proceeded in reverse toward the point where operations were to begin. One or more times he stopped and pulled forward to correct his line of travel. After traveling backward about 150 feet, Willingham looked forward and saw Correll lying face down, head toward the scraper, in the south side of the ditch on the tracks left by the right tires. Correll was unconscious and later died of his injuries. There were no eyewitnesses to the accident.

The scraper had no rearview mirrors and was not equipped with either an audible or a visible backup warning signal. It was undisputed that the machine lacked rear visibility and that Willingham could not have seen Correll if the latter had stepped into the ditch behind him.

Plaintiffs sought to establish that defendant Clark was strictly liable on the ground that the absence of mirrors, backup alarms, or other safety devices constituted a product defect. Plaintiffs' theory, presented through the testimony of Willingham and Briscoe, the operator of the road grader, was that Correll had stepped into the ditch when Willingham made one of his corrective stops and reversed direction; thinking that Willingham was going to continue forward, Correll was caught unaware when Willingham started backing up again and was run over the by right tires of the scraper.

Defendant's theory, presented through the uncontradicted medical testimony of two pathologists, was that Correll had slipped or jumped down the south side of the ditch after the scraper's rear wheel had passed by him and had got his left foot caught under the right front tire as it backed past him; the revolution of the tire had then dragged him downward into the bottom of the ditch, wedging him between the rolling tire and the ditch wall, compressing his body and causing the extensive internal injuries of which he died; after the scraper had passed, the body rolled into the track of the wheel on the bottom of the ditch, making it appear that Correll had been run over. Thus under defendant's theory of the case, the lack of rear visibility or backup warning signals was not a proximate cause of the accident.

After a two-month jury trial, the jury rendered a defense verdict.

## I.

It is contended on appeal from the judgment for Clark that the trial court committed prejudicial error in instructing the jury that it was plaintiffs' burden to establish by a preponderance of the evidence that "The scraper in question, at the time it was leased and delivered, was in an *unreasonably dangerous* condition due to its design, which unreasonable condition created a defect in the product; . . ." (Italics added.)

The claim of error focuses on the instructional requirement that for plaintiffs to prevail they must prove and the jury must find not only that the scraper was defective but also that the defect rendered the product "unreasonably dangerous." Plaintiffs' claim of error is supported by *Cronin v. J.B.E. Olson Corp.* (1972) 8 Cal.3d 121 [104 Cal.Rptr. 433, 501 P.2d 1153], decided after the trial in this matter.

In *Cronin v. Olson, supra,* a case of first impression, the Supreme Court held that a plaintiff in a strict product liability action was not required to prove, in addition to a product defect proximately causing his injuries, that the defect rendered the product "unreasonably dangerous" to its user or consumer. The court reasoned that the "unreasonably dangerous" element rang of negligence and was thus out of harmony with the risk-allocation policies of strict product liability theory. (8 Cal.3d at p. 132.)

*Cronin* is retrospective in its application. (See *Henderson v. Harnischfeger Corp.* (1974) 12 Cal.3d 663, 669-670 [117 Cal.Rptr. 1, 527 P.2d 353]; *Mark v. Pacific Gas & Electric Co.* (1972) 7 Cal.3d 170, 178-179 [101 Cal.Rptr. 908, 496 P.2d 1276]; *Beard v. Atchison, Topeka & Santa Fe Ry. Co.* (1970) 4 Cal.App.3d 129, 135 [84 Cal.Rptr. 449].) ■ Nevertheless, plaintiffs may not now successfully urge the adventitious intervention of *Cronin* if they themselves requested an instruction defective in substantially similar respects to that of which they now complain. (*Henderson v. Harnischfeger Corp., supra,* 12 Cal.3d at p. 670; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 267, pp. 4257-4258.) In fact, the plaintiffs did request and the trial court gave no less than five instructions in which the "unreasonably dangerous" formulation appeared. In addition, 10 such instructions requested by plaintiffs were either withdrawn or rejected by the trial court.

Plaintiffs claim the invited error doctrine is rendered inapplicable by purported burden of proof distinctions as to the "unreasonably dangerous" element between their offered instructions and the one of which

they complain. An examination of the instructions refutes this contention. For example, in plaintiffs' proffered instruction on the constituents of strict liability the element of product defect is elaborated in terms of its unreasonably dangerous character. Similarly, a causation instruction offered by plaintiffs identifies the unreasonably dangerous condition of a product as a possible concurring cause. (See *Henderson* v. *Harnischfeger Corp., supra,* 12 Cal.3d at p. 670; compare with *Luque* v. *McLean* (1972) 8 Cal.3d 136 [104 Cal.Rptr. 443, 501 P.2d 1163].) Both of these instructions were given. The burden of proving product defect and proximate cause is of course upon the plaintiffs.

Accordingly, we shall affirm the judgment in favor of defendant Clark Equipment Company. This disposition makes it unnecessary for us to consider Clark's cross-appeal from the order dismissing its cross-complaint against Dubach and Employers.

## II.

There remains the matter of the trial court's distribution of the settlement proceeds paid by defendant State. The settlement, in the amount of $15,000, was effected on the eve of trial. At plaintiffs' request, the court deferred determination of how the settlement proceeds should be distributed until the conclusion of the trial.

Employers had filed a complaint in intervention against Clark (Lab. Code, § 3853) seeking reimbursement for workers' compensation benefits paid to plaintiffs on account of Correll's death. The benefits paid exceeded $15,000, the amount of the settlement with State. The complaint in intervention was tried together with the main action. Employers does not appeal from the adverse judgment in favor of Clark. However, following entry of judgment, Employers moved for an order distributing to it in satisfaction of its claim of lien the full amount of the $15,000 settlement proceeds free of plaintiffs' claim for expenses of litigation, costs and attorney's fees. The motion was granted.

Plaintiffs argue that this disposition was incorrect for two reasons. First they urge Employers is barred from recovery by the concurrent negligence of Dubach, its insured, and the employer of Correll. (See *Witt* v. *Jackson, supra,* 57 Cal.2d 57.) Secondly, plaintiffs assert that even if *Witt* v. *Jackson, supra,* does not apply, Labor Code section 3860 by its terms requires that plaintiffs' attorney be reimbursed out of settlement proceeds for his reasonable expenses, costs and fees before that fund may be applied to satisfy Employers' lien.

The apparent theory upon which plaintiffs ask us to apply the rule of *Witt* v. *Jackson* is that the State, having contracted a portion of the work on the Interstate 880 project to Dubach, was liable vicariously, if at all, for the negligence of Dubach; State's settlement of $15,000 was determinative that Dubach had engaged in tortious misconduct imputable to State; therefore Employers, standing in Dubach's shoes (Lab. Code, § 3850, subd. (b)), may not recover from State, a third party tortfeasor.

■ The bare fact of settlement carries with it no admission of liability by a compromising defendant. Accordingly, the settlement in this instance may not be used by plaintiffs as a springboard to defeat Employers' lien (see *Van Nuis* v. *Los Angeles Soap Co.* (1973) 36 Cal.App.3d 222, 232 [111 Cal.Rptr. 398]; *Brown* v. *Superior Court* (1970) 3 Cal.3d 427, 431-432 [90 Cal.Rptr. 737, 476 P.2d 105]). Before *Witt* v. *Jackson, supra,* may be invoked to bar an employer's recovery against a third-party defendant, the question of the employer's negligence must be adjudicated and a finding made thereon. (See *Serrano* v. *Workmen's Comp. Appeals Bd.* (1971) 16 Cal.App.3d 787, 791-792 [94 Cal.Rptr. 511].)

It would appear that plaintiffs withdrew their request for findings on the issue of Dubach's negligence. In an apparent attempt to circumvent this problem, plaintiffs argued below and urge again on appeal that the trial court itself should have made a finding after the trial on the issue of the employer's negligence. Since the record does not indicate that either Dubach or Employers waived its right to jury trial on this issue, plaintiffs' contention must be rejected. Moreover, the court's dismissal (nonsuit) of Clark's cross-complaint alleging Dubach's negligent failure to provide Correll with a safe place to work was a rejection of the very contention of employer negligence here made by plaintiffs. Accordingly, Employers is entitled to enforce its lien against the settlement proceeds.

The other argument plaintiffs advance to reverse the trial court's disbursement order is that Labor Code section 3860 requires that plaintiffs' reasonable expenses, costs, and attorney's fees be paid out of settlement proceeds before satisfaction of Employers' lien. Labor Code section 3860 provides: "(a) No release or settlement under this chapter, with or without suit, is valid or binding as to any party thereto without notice to both the employer and the employee, with opportunity to the employer to recover the amount of compensation he has paid or become obligated to pay and any special damages to which he may be entitled under Section 3852, and opportunity to the employee to recover all damages he has suffered and with provision for determination of expenses and attorney's fees as herein provided.

"(b) Except as provided in Section 3859, the entire amount of such settlement, with or without suit, is subject to the employer's full claim for reimbursement for compensation he has paid or become obligated to pay and any special damages to which he may be entitled under Section 3852, together with expenses and attorney fees, if any, subject to the limitations in this section set forth.

"(c) Where settlement is effected, with or without suit, solely through the efforts of the employee's attorney, then prior to the reimbursement of the employer, as provided in subdivision (b) hereof, there shall be deducted from the amount of the settlement the reasonable expenses incurred in effecting such settlement, including costs of suit, if any, together with a reasonable attorney's fee to be paid to the employee's attorney, for his services in securing and effecting settlement for the benefit of both the employer and the employee.

"(d) Where settlement is effected, with or without suit, solely through the efforts of the employer's attorney, then, prior to the reimbursement of the employer as provided in subdivision (b) hereof, there shall be deducted from the amount of the settlement the reasonable expenses incurred in effecting such settlement, including costs of suit, if any, together with a reasonable attorney's fee to be paid to the employer's attorney, for his services in securing and effecting settlement for the benefit of both the employer and the employee.

"(e) Where both the employer and the employee are represented by the same agreed attorney or by separate attorneys in effecting a settlement, with or without suit, prior to reimbursement of the employer, as provided in subdivision (b) hereof, there shall be deducted from the amount of the settlement the reasonable expenses incurred by both the employer and the employee or on behalf of either, including costs of suit, if any, together with reasonable attorneys' fees to be paid to the respective attorneys for the employer and the employee, based upon the respective services rendered in securing and effecting settlement for the benefit of the party represented. In the event both parties are represented by the same attorney, by agreement, the attorney's fee shall be based on the services rendered for the benefit of both.

"(f) The amount of expenses and attorneys' fees referred to in this section shall, on settlement of suit, or on any settlement requiring court approval, be set by the court. In all other cases these amounts shall be set by the appeals board. Where the employer and the employee are

represented by separate attorneys they may propose to the court or the appeals board, for consideration and determination, the amount and division of such expenses and fees."

Plaintiffs place primary reliance on subdivision (c) of section 3860 which gives the employee's attorney priority where settlement is effected "solely through [his] efforts." ■ The trial court, relying expressly upon a declaration by the judge who conducted the settlement conference, found that settlement "was not effected solely through the efforts of" plaintiffs' attorney. We are bound by this finding as there is substantial evidence to support it in the declaration relied upon. Furthermore, the record does show substantial exertions by Employers' attorney to effect settlement with the State and dismissal of the State's cross-complaint against Dubach. Thus this case comes within subdivision (e) of section 3860 of the Labor Code and both parties' attorneys' fees, costs and reasonable litigation expenses incurred in effecting settlement are given priority over Employers' lien.

Plaintiffs submitted an itemization of costs and expenses totaling $7,318.16 incurred up to the date of the settlement with the State. Relatively few of the items are identifiable as recoverable costs (see 4 Witkin, Cal. Procedure, *supra,* Judgment, §§ 100-108, pp. 3255-3261). By far the greater part consists of expenses incurred in preparation for trial such as charges for investigation. The trial court was skeptical that the amount claimed was spent "just to maintain [plaintiffs'] cause of action against the State of California." Pressed to allocate those expenditures between the respective cases against the State and Clark, plaintiffs' counsel professed inability to do so. Later, counsel relented and agreed to make the effort. In the event counsel reduced the costs and expenses claimed against the settlement proceeds a mere $82.43. Thereafter the trial court allowed Employers' lien free and clear of any and all costs and attorney's fees of plaintiffs' counsel.

By their insistence on priority over Employers' lien of virtually all their litigation expenses incurred before settlement, plaintiffs in effect seek to force Employers to finance a substantial portion of their third party litigation against Clark. The trial judge correctly perceived the unreasonableness of charging the settlement proceeds with payment of substantially all of plaintiffs' undifferentiated expenses incurred up to settlement in prosecuting the action against the State and Clark. The obvious inequity of such a result apparently influenced the trial court's decision. ■ Nonetheless, by reason of their efforts in achieving the settlement, plaintiffs are entitled to *reasonable* expenses, attorney's fees

and costs all as related thereto. Furthermore, these allowances "shall . . . be set by the court." (Lab. Code, § 3860, subd. (f).) Thus, plaintiffs' unwillingness to submit a reasonable figure for expenses fairly allocable to the action against the State did not relieve the trial court of its obligation under Labor Code section 3860, subdivision (f), to make an appropriate allocation for expenses, costs, and fees.

In determining a proper allowance to plaintiffs' attorney, the key word is "reasonable." Since "reasonable" is a relative term, the problem in a case of this kind is the quantity with respect to which the allowance to plaintiffs should bear a reasonable relationship. If for example plaintiffs' cause of action for damages were against the State alone, the recovery against the State would provide a yardstick to measure reasonableness. In that situation, the efforts of counsel for plaintiffs which produce the recovery from which expenses, fees and costs will be paid should bear a reasonable relationship to the total amount of the recovery if counsel's exertions are to serve their ultimate purpose, i.e., making the plaintiffs as nearly whole as possible. In other words, barring extraordinary circumstances, it would be unreasonable for counsel to expend on plaintiffs' behalf $15,000 in time and resources to recover $15,000.

The problem of allocation is further complicated where, as here, the total amount of the recovery is inadequate to satisfy the demands of all the priority claimants. However, a reasonable basis does exist for allocation of undifferentiated costs and expenses between the respective cases against the State and Clark. First, it must be borne in mind that the portion of a plaintiffs' claim still unliquidated at the time of settlement may ultimately fail either partially or, as happened here, totally. Nonetheless, eschewing the wisdom born of hindsight, a value may be placed upon plaintiffs' unliquidated claim as of the time partial settlement was effected. Once determined, the values of the two cases combined provide a basis fairly to apportion costs and expenses incurred up to the time of settlement in relation to the action as a whole.

For purposes of allocation, the value of plaintiffs' unliquidated claim lies in the penumbra described by the amount of the prayer, the amount demanded by plaintiffs of the jury, and the amount of plaintiffs' settlement demand. In assigning a value to plaintiffs' unliquidated claim, it is important to recognize that the lower the figure, the larger the percentage of costs and expenses chargeable to the settlement proceeds. Fairness requires that the pro rata share of undifferentiated costs, expenses and fees allocable to a losing effort be absorbed by plaintiffs. Because the risk of such failure should be borne by plaintiffs, the

assigned value of plaintiffs' unliquidated claim should be no less than plaintiffs' lowest settlement demand, if any. That figure, presumably a more realistic evaluation of plaintiffs' own case than the prayer or perhaps the jury demand, closely approximates the watershed between success and partial or even complete failure. It would be anomalous to permit plaintiffs to recover a larger percentage of settlement proceeds on account of costs, expenses and fees merely because pursuit of the unliquidated portion of their claim was less than an unqualified success. And success for these purposes is more fairly measured by plaintiffs' reasonable evaluation of their case than the inevitably more modest assessment of the defendant.

Once the trial court has assigned a value to the unliquidated portion of plaintiffs' claim, the proceeds of settlement may be charged with recovery of that portion of the total undifferentiated costs and expenses incurred up to the time of settlement that bears the same ratio to the whole of such costs and expenses as the settlement proceeds bear to the sum derived by adding the value of plaintiffs' unliquidated claim to the amount of the settlement.

We hasten to emphasize that the determination of a reasonable allocation of costs and expenses is a question for the trial court, to be determined in the exercise of its sound discretion, unbound by rigid formulae. We have here merely suggested one analytical approach. There are doubtless others which would yield a fair result. Nor do we overlook the possibility that a plaintiff's claim for costs and expenses in similar circumstances could be prima facie reasonable although not computed with mathematical precision. Manifestly, however, that is not the case in the instant matter.

It follows from what has been said that in addition to reasonable costs and expenses, counsel is entitled from the settlement proceeds to reasonable attorney's fees to be set by the court.

The judgment is affirmed. The post-judgment order allowing Employers' lien against the settlement proceeds in full is reversed and the cause remanded to the trial court with directions to proceed in accordance with the views expressed in this opinion.

Janes, J., and Evans, J., concurred.

The petition of the plaintiffs and appellants for a hearing by the Supreme Court was denied March 2, 1978.