Irene **PHERSON**, Plaintiff-Appellant,

v.

The **GOODYEAR TIRE & RUBBER COMPANY**, Defendant-Appellee.

No. 77–2391.

United States Court of Appeals, Ninth Circuit.

Dec. 29, 1978.

Rehearing Denied Feb. 23, 1979.

---

Peter P. Gamer, San Diego, Cal., for plaintiff-appellant.

John P. McCormick, San Diego, Cal., for defendant-appellee.

Before MERRILL and ANDERSON, Circuit Judges, and BARTELS,* District Judge.

J. BLAINE ANDERSON, Circuit Judge:

On December 28, 1973, appellant brought suit against several defendants for personal injuries she sustained on July 4, 1973. Jurisdiction was based on diversity of citizenship, and therefore California law is applicable. The action was tried before a jury in February 1977. The jury returned a verdict for defendant-appellee Goodyear Tire & Rubber Company. This appeal followed.

Appellant raises several issues on appeal. The most substantial issue is whether *Barker v. Lull Engineering Co.*, 20 Cal.3d 413, 143 Cal.Rptr. 225, 573 P.2d 443 (1978), decided while this appeal was pending, mandates reversal of the judgment. After a close examination of the record, we affirm.

## FACTS

Appellant was severely injured when the rear tire of the pickup truck she was riding in blew out. The driver lost control and the truck overturned. After the other defendants were dismissed, appellant proceeded against appellee on a theory of strict liability in tort.

The principal factual issue contested at the trial was what caused the tire to ex- plode; the principal legal issue was whether the design of the tire was defective. Appellant's case was premised on strict liability in tort. The evidence indicated that the air pressure in the tires had been checked, either visually or with a gauge, less than a hundred miles previously. It was a hot day, and the truck was heavily loaded. The tire exploded without warning though the tread was still good.

Overdeflection was the cause, according to the expert testimony. Appellee's brief explains overdeflection:

"As a particular portion of a tire strikes the roadway, the sidewall is called upon to act as a hinge, allowing the tread surface of the tire to depress into the air chamber. Insufficient air pressure within the chamber results in the sidewall overdeflecting, thus causing the buildup of heat and, in extremes, the destruction of the sidewall at the site of the overdeflection. This ultimately causes an explosion, usually in the sidewall. Thereafter, the rim drops to the road surface causing extreme wrenching and tearing apart of the weakened tire known as 'run flat' situation (RT 757, 1. 13—759, 1. 16)."

Appellant's expert testified that at 20 lbs. per sq. in. (psi) overdeflection could occur. At 20 psi, 12 psi below the recommended pressure, the underinflation is unnoticeable. Apparently because the tire fragments did not substantiate the existence of a defect in workmanship, this became appellant's factual theory of recovery: if underinflation posed a severe risk and could not be visually detected, there was a defect in design or in the failure to warn.

Appellee countered with two experts who testified that at 20 psi the tire would not overdeflect, but only wear faster. Appellee's experts' testimony was, unlike the testimony of appellant's expert, based on many tests and years of experience in the tire industry. Based on their examination of the tire fragments, appellee's experts theorized that the blowout was caused by a

---

* The Honorable John R. Bartels, Senior United States District Judge for the Eastern District of New York, sitting by designation.

slow leak from a nail or other penetrating object and this reduced the tire pressure to approximately 5 psi. At 5 psi, appellee's experts admitted, the tire will explode. The jury apparently accepted this explanation.

## ANALYSIS

■ Appellant's first contention is that Goodyear inadequately answered interrogatories directed to tests run on the tire. The interrogatories and answers are set out below:

"INTERROGATORY NO. 59: As to this product design, were any tests made to determine the fatigue points, endurance points, or failure points?

"ANSWER TO INTERROGATORY NO. 59: Yes.

"INTERROGATORY NO. 60: If so, state:

"(a) When tests made;

"(b) Are there written reports;

"(c) Results on each test;

"(d) Description of each critical point.

"ANSWER TO INTERROGATORY NO. 60: Tests are made on a continuing basis so long as the tire line is produced. There are written reports. The tire passed the tests. The testing criteria is set forth in Motor Vehicle Safety Standard 109. See CFR Title 49, Sec. 571.-109."

Appellant contends that because the testing criteria set forth in Motor Vehicle Safety Standard 109 only require that tires be tested to a low of 24 psi, the Answer to Interrogatory No. 60 means that no tests were run below 24 psi.

We find appellant's interpretation of the above answer to be hyper-technical, if not wholly unwarranted, particularly since the test requirements have only been in effect since 1971. Appellant's reliance on such a questionable interpretation of the answer was unreasonable. Any resulting surprise and prejudice is more properly attributed to appellant's lack of diligence: production of the test results was never requested, and the defense's experts were never deposed.

■ Appellant next contends that the trial judge erred by refusing to instruct the jury that negligence is not a defense to strict liability. The instruction was unnecessary. There was no evidence that appellant was negligent—she was a passenger. The instruction on concurrent causes given by the trial judge properly instructed the jury that the concurrent negligence of nonparties was not a defense. We find no error.

■ Appellant also contends that no instruction on misuse should have been given and that the instruction given was incorrect and confusing. There was sufficient evidence of overloading the truck, etc., to warrant an instruction on misuse. The instruction given correctly and clearly explained that a reasonably foreseeable misuse of the tire was not a defense. Again, we find no error.

■ The remaining issues all pertain to how "defective design" is to be defined and proved under California law. *Barker v. Lull Engineering Co.* summarizes California law on the definition of design defect:

"First, our cases establish that a product may be found defective in design if the plaintiff demonstrates that the product failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner.

.    .    .    .    .

"[Second] Numerous California decisions . . . have made clear, through varying linguistic formulations, that a product may be found defective in design, even if it satisfies ordinary consumer expectations, if through hindsight the jury determines that the product's design embodies 'excessive preventable danger,' or, in other words, if the jury finds that the risk of danger inherent in the challenged design outweighs the benefits of such design."

143 Cal.Rptr. at 236, 573 P.2d at 454. These alternative definitions were clearly established as the law of California at the time the instant case was tried. *Compare Self v.*

*General Motors Corp.,* 42 Cal.App.3d 1, 116 Cal.Rptr. 575 (1975) *with Baker v. Chrysler Corp.,* 55 Cal.App.3d 710, 127 Cal.Rptr. 745 (1976) and *Buccery v. General Motors Corp.,* 60 Cal.App.3d 533, 132 Cal.Rptr. 605 (1976). The jury was instructed:

"The following factors are to be considered in determining whether a defect in design existed when the tire left the manufacturer. One: The availability of an alternative design which would have prevented the injury. Two: The feasibility of the alternative design in terms of cost, practicality and technology. A design may not be found defective when, under the present state of the art, alternative designs are unreasonable. A product need not be found defective simply because an accident occurred." (R.T. 1117).

Appellant offered the following instruction:

"A product has a design defect if· a characteristic of the product is a proximate cause of injuries to the plaintiff." (C.R. 468)

This is an incorrect statement of California law. *See Barker v. Lull Engineering Co., supra.* The instruction is overbroad, for it allows recovery when the product meets consumer expectations and no alternative designs are available. The cases cited by appellant to support her definition hold only that a product need not be "unreasonably dangerous" to be defective. *Horn v. General Motors,* 17 Cal.3d 359, 131 Cal.Rptr. 78, 551 P.2d 398 (1976); *Cronin v. J.B.E. Olson Corp.,* 8 Cal.3d 121, 104 Cal.Rptr. 433, 501 P.2d 1153 (1972).

◼ The instruction given by the trial court correctly states the second prong of the defective design definition previously quoted. The instruction does omit the first prong of the definition, but appellant failed to request an instruction on consumer expectations except as they related to appel-

lee's duty to warn. The instructions on "duty to warn" that appellant did request were given,[1] and we cannot say that the jury's verdict is wrong as a matter of law.[2] *See Korli v. Ford Motor Co.,* 84 Cal.App.3d 895, 149 Cal.Rptr. 98 (1978).

Appellant's primary legal theory was that Goodyear failed to warn of the danger of blowouts. Appellant never argued that failure to meet consumer expectations was equivalent to a defect *per se* ; appellant's sole contention was that it triggered appellee's duty to warn. The instructions' emphasis on "duty to warn" was proper: under California law the definition of a defect is to be fashioned according to the legal theories and evidence presented. *Barker v. Lull Engineering Co., supra; Baker v. Chrysler Corp., supra; Self v. General Motors Corp., supra.*

*Barker v. Lull Engineering Co.* also holds that once "the plaintiff makes a prima facie showing that the injury was proximately caused by the product's design, the burden [of proof] should appropriately shift to the defendant to prove, in light of the relevant factors, that the product is not defective." 143 Cal.Rptr. at 237, 573 P.2d at 455. Appellee argues that this aspect of the decision breaks new ground and should not be applied to cases, such as this one, that were tried before the effective date of the decision. *Li v. Yellow Cab,* 13 Cal.3d 804, 119 Cal.Rptr. 858, 532 P.2d 1226 (1975). Appellant argues that the decision should be applied retroactively in accordance with the general rule in California, *Mark v. Pacific Gas & Electric Co.,* 7 Cal.3d 170, 101 Cal. Rptr. 908, 496 P.2d 1276 (1978), and that in fact it is being applied retroactively. *Korli v. Ford Motor Co.,* 84 Cal.App.3d 895, 149 Cal.Rptr. 98 (1978).

We do not decide this important question of state law, for we conclude that retroactive application of *Barker* would not require

---

1. Appellant therefore cannot complain that these instructions were incorrect. Furthermore, recent case law holds that similar instructions are correct. *Dosier v. Wilcox & Crittendon Co.,* 45 Cal.App.3d 74, 119 Cal.Rptr. 135 (1975).

2. In fact, appellant's expert conceded that a tire's susceptibility to puncture ·was not a defect (R.T. 624).

reversal of the trial court's judgment. Several facts contribute to our conclusion.

 First, appellant's proposed instruction (C.R. 463) placed the burden of proof on appellant. This instruction was the basis for the instruction given. Although we do not rely exclusively on this fact and the doctrine of invited error, it is one consideration to be weighed. *Compare Correll v. Clark Equipment Co.,* 76 Cal.App.3d 548, 553–554, 143 Cal.Rptr. 269, 273 and *Henderson v. Harnischfeger Corp.,* 12 Cal.3d 663, 117 Cal.Rptr. 1, 527 P.2d 353 (1974) *with Luque v. McLean,* 8 Cal.3d 136, 104 Cal. Rptr. 443, 501 P.2d 1163 (1972); *see Bartholomew v. Abramowitz,* 125 U.S.App.D.C. 281, 371 F.2d 747 (1966).

Second, appellant made only the barest prima facie showing of a design defect. At trial Goodyear effectively assumed the burden of proof: Goodyear offered extensive testimony from both of its experts to the effect that there were no practical alternatives. The closing arguments also show that Goodyear willingly assumed this burden. Although when read together the instructions technically do place the burden of proof on the plaintiff, the instruction on defective design does not mention plaintiff's burden and only instructs the jury to consider several factors in determining whether a defect in design existed. Thus, in light of the testimony presented, the closing arguments, and the instructions, we conclude that as a practical matter the burden of proof regarding the feasibility of alternative designs was shouldered by appellee.

Third, a new trial would serve no purpose in any event. We have closely examined the expert testimony offered by both sides. Appellant's expert testimony was speculative and unconvincing. Appellee's expert testimony was precise, knowledgeable, and convincing. We deem it highly improbable that a new trial would result in a verdict favorable to appellant and therefore find that the alleged error did not prejudice appellant. *See Lynch v. Traveler's Indemnity Co.,* 452 F.2d 1065 (8th Cir. 1972); rule 61, Fed.Rules Civ.Proc., 28 U.S.C.; 28

U.S.C. § 2111; *accord, Vistica v. Presbyterian Hospital and Medical Center,* 67 Cal.2d 465, 62 Cal.Rptr. 577, 432 P.2d 193 (1967); *People v. Watson,* 46 Cal.2d 818, 299 P.2d 243 (1956); *cf. Johnson v. Hislop,* 272 F. 913 (9th Cir. 1921); *Korli v. Ford Motor Co.,* 84 Cal.App.3d 895, 149 Cal.Rptr. 98 (1978). *See generally Henderson v. Harnischfeger Corp.,* 117 Cal.Rptr. 1, 527 P.2d at 357–60 (court to consider entire record when determining whether error was prejudicial); Wright and Miller, *Federal Practice and Procedure* §§ 2883–2885 (1973) (entire record to be considered).

Appellant's other contentions are meritless.

AFFIRMED.